## WHERE A LOSS MUST FALL UPON ONE OF TWO INNOCENT PARTIES.

Court of Appeals for Hamilton County.

THOMAS L. EVANS V. JAMES P. VAUGHAN ET AL.

Decided, March 4, 1914.

*Promissory Note—Made Payable at an Attorney's Office—Is Paid to the Attorney Who Absconds—Maker and Payee both Innocent of Intentional Wrong—Determination as to Whose Carelessness was Responsible for the Loss—Agency—Evidence.*

1. Where a promissory note is made payable at the office of an attor-
ney and the maker and payee never meet but the amount of the
loan was handed to the maker by the attorney in question, and
for several years the maker paid interest on the note to the at-
torney and finally paid the principal upon the promise of the
attorney to send him the canceled note, which was not done but
the attorney thereafter absconded, a finding by a jury under
proper instructions that as between the two innocent parties the
carelessness of the payee was responsible for the loss will not be
disturbed by a reviewing court.

2. In such a case it is not error to exclude the answer of the payee as
to whether he authorized the said attorney to collect the principal
of the note.

*Overbeck, Katlenhorn & Park,* for plaintiff in error.
*G. C. Wilson,* contra.

JONES, E. H., J.; JONES, O. B., J., concurs; SWING, J., dissents.

The action in the court below was upon a note for $700 secured
by a mortgage. The following is a copy of the note sued upon:

"$700.00.                     CINCINNATI, O., March 21st, 1905.

"Two years after date I promise to pay to the order of T. L.
Evans, seven hundred dollars. Payable at the law office of J. E.
Humphreys, Cin. O., value received with interest at 6 per cent.
per annum payable semi-annually. Privilege given to pay all at
end of one year.          (Signed)   JAMES P. VAUGHAN."

The endorsements on this note showed payment of interest to
September 21, 1910. The plaintiff asked judgment below for

the principal and interest from September 21, 1910, and also asked for foreclosure of the mortgage given to secure the payment of this note.

Defendant James P. Vaughan in his answer pleaded payment. The evidence showed that he had paid the semi-annual installments of interest as they became due, to September 21, 1910, at the office of J. E. Humphreys; that he had also paid upon the principal the sum of $300 at the law office of J. E. Humphreys in Cincinnati, Ohio, on September 21, 1909, and paid the installments of interest as they became due upon the remainder of the principal; and that on November 10, 1910, he paid at the law office of J. E. Humphreys the sum of $400 balance due on principal and also $3 as interest, which, as he alleged, was all that was then due upon the note.

It is not contended by Mr. Vaughan that upon any of these occasions when he called at Mr. Humphreys' office to pay interest or principal, he saw the note. On the other hand, Mr. Evans, the payee of the note, testified that the note and mortgage were in his possession during all of this time. Mr. Vaughan says that on November 10, upon which date, as he thought, said note was fully paid, John E. Humphreys promised him to return properly canceled the note and mortgage. This Humphreys never did, The evidence shows that shortly thereafter he absconded, having failed to account to Mr. Evans for either the $300 or the $400 which were paid by Mr. Vaughan upon the principal. The evidence shows, however, that all the installments of interest, with the exception of the $3 paid on November 10, 1910, were remitted to Mr. Evans by Mr. Humphreys, and that after the payment of the $300 above referred to he continued to send remittances for interest the same as if said $300 had not been paid, when in fact he was receiving, after such payment, interest upon only $400 semi-annually. In other words, instead of paying the sum of $12 as interest to Mr. Evans after September 21, 1909, which sum was the amount actually received by him, he sent to Mr. Evans the sum of $21 as each installment of interest became due and payable, obviously for the purpose of concealing from Mr. Evans the fact that he had ever received the payment upon the principal.

The action below was one for a personal judgment, and was tried by a jury. The question presented by the pleadings and the evidence was, which of two innocent persons should suffer by reason of the defalcation or embezzlement of this money by Humphreys.

The court charged the jury properly, as we think, in a special charge, as follows:

"If you find that both this plaintiff and defendant are innocent of any intentional wrong, but that the loss in question in this case must fall upon one of them, then I charge you that the one of them whose carelessness was responsible for the loss, must suffer the loss, if you find there was such carelessness."

The jury having found in favor of the defendants, it is but reasonable to conclude that under the charge of the court to the jury they found that the plaintiff had been guilty of carelessness, which carelessness had induced the defendant Vaughan to make the payments to Humphreys upon the note. Unless this finding is clearly against the manifest weight of the evidence and in the absence of any error in the charge of the court or in the admission or the rejection of material evidence, it follows that the verdict of the jury can not be questioned. The issue presented by the pleadings and submitted to the jury was one of fact to be determined solely by the jury on the evidence in the case.

We have read the record in the case very carefully in order to satisfy ourselves as to the evidence and the weight thereof as touching the respective claims of the parties. We can not, say, after this examination, that the verdict of the jury is wrong.

It is contended by counsel for plaintiff in error that the question as to the position occupied by Humphreys in this transaction, viz., whether in receiving the sums paid upon the principal of the note he acted as the agent of Evans or as the agent of Vaughan, was one of law and should have been determined by the court. With this contention we can not agree. The action being primarily one for a money judgment is triable to a jury. The jury was entitled to hear all the evi-

dence material to the issue, and all that would in any way enable them to decide whether or not the defendant had paid the note as claimed in his defense.    It became a question, therefore, whether Mr. Vaughan had merely taken his money to Mr. Humphreys' office and left it there in the custody of Mr. Humphreys with the request, express or implied, that it should be applied in payment of the Evans note, or whether he had paid it to Mr. Humphreys, warranted in believing from all the circumstances that he represented Mr. Evans as agent in the transaction and as such was authorized by Evans to receive the principal and interest.

The facts in the case in addition to those above stated are that although this note ran more than three years after it became due, the payee and holder thereof made no demand upon Mr. Vaughan at any time for the payment of the note and, so far as the evidence discloses, gave the matter no attention whatever. Mr. Vaughan and Mr. Evans had never seen each other before the trial of this case in the court below.    The note stated on its face that it was to be paid "at the office of J. E. Humphreys, Cincinnati, Ohio."    Vaughan was ignorant and unaccustomed to business affairs.    The law is well settled that to make a note  payable at a bank does not authorize the maker to pay the note at such bank and discharge him therefrom upon doing so, unless the bank at the time of payment has the note in its possession.    Nearly all blank forms of promissory notes are printed so as to be made payable at some bank or financial institution, and little attention is usually given by parties to a transaction to the provisions of the note in this respect.

It seems to us to make a somewhat different situation where as in this case the words are inserted in the note making it payable at the private office of an attorney at law.    This alone might not be important, but when it is borne in mind that the evidence in this case shows that Mr. Vaughan had never seen Mr. Evans; that Mr. Humphreys through an agent, Mr. Morton, was the one to whom he had applied for the loan; that the money was paid over to him by Mr. Humphreys; that he handed his note and mortgage to Mr. Humphreys who filed the latter for record; that he paid the interest for five years to Humphreys with the knowl-

edge and without any protest from Evans; and, although the
note was over-three years past due when it was paid, which fact
usually brings some protest or notice from the payee that he
never received any notice, all these circumstances combine to
induce a man such as Vaughan to look upon Humphreys as the
agent of Evans for all purposes of the transaction.

Cases have been cited by both sides, and counsel for plaintiff
in error rely upon the case of *Antioch College* v. *Carroll*, 25 W.
L. B., 289, decided by Judge Taft. That case was tried to the
court without the intervention of a jury, it being an equitable
proceeding. It is needless to say that none of the cases pre-
sented by either side present the same state of facts as we find
here. Such being the case, we should not be justified in discred-
iting the verdict of the jury in the case at bar, for the reason
that it does not coincide with the views expressed in another
case, where the facts are not identical, however able and dis-
tinguished might be the jurist who announced the opinion.

Some alleged errors are pointed out in the brief for plaintiff
in error in the admission and rejection of evidence. One of
these objections touches a vital spot in this case, and for that
reason we shall refer to it briefly here. On page 48 of the bill
of exceptions plaintiff was asked this question:

"Q. I will ask you whether you at any time authorized Mr.
Humphreys to collect the principal of the note made by James P.
Vaughan to your order in controversy in this case?"

An objection to this question was sustained and the ruling
was excepted to. The court very properly stated, in passing
upon this objection, that it was "what was said and done" that
should be inquired into. The question, in the form in which it
was presented, asked the witness to give his conclusions.

In order to bind Mr. Evans in this case by the payment to
Humphreys it was not necessary that any express authority be
shown as having been given by him to Humphreys, but authority
might be implied from the acts of the parties. Such being the
case, the court properly refused to allow the question to be an-
swered.

This ruling upon the evidence involves in its legal aspect the question raised by an objection to the general charge of the court. The court charged the jury, in part, as found on page 57, as follows:

"Now an agent may be one who has authority to collect money, actual authority to collect or ostensible authority to collect it. Now ostensible authority to collect money is shown by the intentional acts between two parties, or by the want of ordinary care, causing the loss to a third person, and that would be Mr. Vaughan in this case, to believe Mr. Humphreys had a right to collect this money on this note and mortgage. If you find from a preponderance of the evidence, Mr. Evans either actually or ostensibly permitted Mr. Humphreys to act as his agent in collecting this money, that he did this intentionally or by want of ordinary care, or by his own negligence led Mr. Vaughan to believe and have reason to believe that Mr. Humphreys was his agent to collect the money, then Mr. Evans can not recover and your verdict will be for defendant."

The law is correctly, though somewhat imperfectly, stated in this portion of the charge. It is manifest, therefore, that the court below having in mind the principle here enunciated refused to permit Mr. Evans to answer the question above quoted as to whether he had ever authorized Mr. Humphreys to collect the principal sum of the note.

We think there was no error to the prejudice of the plaintiff in error here in any of the matters complained of in counsel's brief.

The jury, under proper instructions from the court found that Mr. Vaughan in paying the money to Humphreys regarded Mr. Humphreys as the agent of the payee and as fully authorized to receive the money.

We think it was only natural for a man of Vaughan's inexperience to be induced so as to believe and so to look upon Mr. Humphreys, from all the facts and circumstances in this case, and from the conduct of Mr. Evans himself. His silence for five years, and especially for the last three years when the note was overdue, would naturally tend to make Vaughan believe that the entire matter was in the hands of Mr. Humphreys with whom alone he had transacted the business so far.

We do not say that Vaughan was free from any carelessness and negligence. It was his duty as a careful man to have held the payment of the principal of the note until credit was given thereon in his presence or until when final payment was made the note was surrendered to him, but it seems that the implicit confidence which Mr. Evans placed in Mr. Humphreys, who was a stranger to Vaughan, inspired a feeling of security and confidence in the latter.

The jury must have found, as before stated, that of the two innocent parties the negligence of Evans more directly contributed to the loss, and that therefore under the well settled doctrine of law he must be made to suffer.

Judgment affirmed.


SWING, J., dissenting.

There is no evidence in the case that shows that Evans ever constituted Humphreys his agent to receive payment of this note, and there is no evidence that tends to show that Evans in any way represented to Vaughan that he was so authorized, and the judgment therefore is not sustained by the evidence.